Eugene H. Williams, Jr., pro se
Reg. No. 66170-179
FCI Safford
P.O. Box 9000
Safford, Arizona 85548



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

CV14-2285 TUC-RMJJR

| | |
|---|---|
| EUGENE H. WILLIAMS, JR., ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> SUSAN McCLINTOCK, WARDEN, ) <br> Respondent. ) <br> _____ ) | CASE NO. _____ <br><br> **PETITION FOR WRIT OF** <br> **HABEAS CORPUS UNDER** <br> **28 U.S.C. § 2241** |

### INTRODUCTION

Pro se Petitioner, Eugene H. Williams, Jr., respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, based upon ineffective assistance of counsel, actual innocence, and miscarriage of justice.

An essential element of Petitioner's offenses of conviction was not presented to the jury and proved beyond a reasonable doubt. Moreover, that particular essential element does not even exist in Petitioner's case, which establishes his actual innocence. Petitioner's counsel was constitutionally ineffective for failing to raise the issue that the essential element was not proved beyond a reasonable doubt. Failure to consider the constitutional errors will result in a miscarriage of justice.

## I. STATEMENT OF JURISDICTION

Petitioner is in custody at the Federal Correctional Institution at Safford, Arizona, which is in the District of Arizona, Tucson Division. Susan McClintock, Warden, is custodian. Therefore, this Court is Petitioner's custodial court. A petition brought under § 2241 "must be filed in the district where the petitioner is in custody." Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir. 2006); Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000). Accordingly, this Court has jurisdiction.

## II. STATEMENT OF ISSUES

Petitioner was convicted of "firearm" offenses under various sections of 26 U.S.C. §§ 5801 et seq., including §§ 5812, 5841, 5842, 5845, 5861, and 5871, which charge receipt, transfer, or possession of firearms. The charges are based upon Petitioner's handling of "Noise Flash Diversionary Devices" ("NFDDs"), also known slangily as "flash-bangs" or "stun grenades," which the Government claimed were "destructive devices."

An essential element of Petitioner's offense of conviction is that a destructive device "shall not include any device which is neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f).

The Government never presented to the jury that NFDDs must be "designed or redesigned as a weapon" in order to be considered a "destructive device," and thus, a "firearm" for purposes of 26 U.S.C. §§ 5801 et seq.

The Government did not prove to the jury beyond a reasonable doubt that NFDDs are "designed or redesigned" as weapons. Moreover, legally manufactured NFDDs are not "designed or redesigned" as weapons, which demonstrates that Petitioner is actually innocent of his offenses of conviction. Petitioner's trial and appellate counsel were ineffective for failing to raise the issue that the Government did not prove "designed or redesigned as a weapon" beyond a reasonable doubt. Petitioner's conviction was a miscarriage of justice, and failure to consider his claims will result in further miscarriage of justice.

### III. STATEMENT OF THE CASE

Petitioner was named in a superceding indictment on August 17, 2006, in the Southern District of Texas, Houston Division, under Case Number CR-H-06-237-02-S, and charged with receipt and possession of one or more unregistered firearms and destructive devices, listing 39 stun grenades in violation of: (Count 1) 26 U.S.C. §§ 5841, 5861(d), and 5871; (Count 2) receipt and possession of unlawfully transferred firearms, listing 34 stun grenades, in violation of 26 U.S.C. §§ 5812, 5861(b), and 5871; (Count 3) possession of a firearm not registered to Petitioner in the National Firearms Registration and Transfer Record, namely a Model T-429 stun grenade, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; (Count 4) possession of a firearm not registered to Petitioner in the National Firearms Registration and Transfer Record, namely a destructive device identified in 26

U.S.C. § 5845, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; (Count 5) possession of one or more firearms which were not identified by serial number, in violation of 26 U.S.C. §§ 5842(c), 5861(i), and 5871; and (Count 6) aiding and abetting the unlawful storage of high explosives, listing 78 stun grenades, in violation of 18 U.S.C. §§ 2, 842(j), 844(b), and 27 CFR §§ 55.201 et seq.

Petitioner was convicted in a jury trial that began on December 4, 2006. On April 20, 2007, he was sentenced to a term of imprisonment of 120 months. The Fifth Circuit Court of Appeals subsequently affirmed his conviction and sentence, at which time Petitioner timely filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on February 26, 2010. On July 1, 2010, Petitioner's motion under § 2255 was dismissed. He then filed an application for certificate of appealability from the Fifth Circuit Court of Appeals on September 1, 2010, which was denied on February 10, 2011.

## IV. **ARGUMENTS**

One essential element of Petitioner's crimes of conviction is that a "destructive device **SHALL NOT** include any device which is neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f) (emphasis added).

The Government failed to prove the element beyond reasonable doubt. In fact, a review of the trial transcripts shows that the Government never even addressed the essential element of "designed or redesigned as a weapon" at any time during the trial. It is

well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt. <u>See</u> <u>In re Winship</u>, 397 U.S. 358, 364 (1970).

Consequently, Petitioner was "convicted of an act that the law does not make criminal," <u>Schriro v. Summerlin</u>, 542 U.S. 348, 315-352 (2004), which is receipt, possession and transfer of devices that are **NOT** destructive devices or firearms. Petitioner is actually (factually) innocent of his offenses of conviction. <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

Moreover, Petitioner's trial and appellate counsel completely failed to raise the claim that the Government did not prove an essential element of the crimes.

## A. PROOF OF EVERY ELEMENT REQUIRED

Every element of a crime must be proved beyond a reasonable doubt. The Government failed to prove an essential element of Petitioner's offenses of conviction; therefore, the evidence is insufficient for the conviction to stand.

The United States Supreme Court has been very clear for over 200 years that each and every element of a crime must be charged and proved beyond a reasonable doubt. <u>See</u> <u>Grant Bros. v. United States</u>, 232 U.S. 647, 58 L. Ed. 776, 781 (1914); <u>United States v. Carll</u>, 105 U.S. 611, 612-613, 26 L. Ed. 1135 (1882); <u>United States v. Cruikshank</u>, 92 U.S. 542, 23 L. Ed. 588 (1876); <u>United States v. Cook</u>, 17 Wall 174, 21 L. Ed. 539 (1872); <u>United States v. The Brig</u>

Burdett, 9 Peters 682, 691, 9 L. Ed. 273, 276 (1833); Slacum v. Pomery, 6 Cranch 221, 3 L. Ed. 205, 207 (Marshall, Ch. J.) (1803).

> "It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty."

Winship, 397 U.S. at 364.

> "Lest there remain any doubt about the constitutional stature of the reasonable doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

Ibid.

> "[I]t is the imperative duty of a court to see that all the elements of [a] crime are proved, **or at least that testimony is offered which justifies a jury in finding those elements.**"

Clyatt v. United States, 197 U.S. 207, 222 (1905) (emphasis added).

It is well-established that the burden is on the prosecution to **prove each and every element** of the crime charged beyond a reasonable doubt. The Due Process Clause requires the jury **be informed** that a conviction requires "proof beyond a reasonable doubt of **every fact** necessary to constitute the crime with which the defendant is charged." Winship, 397 U.S. at 364 (emphasis added).

"Due process commands that no man shall lose his liberty unless the Government has borne the burden of ... convincing the factfinder of his guilt." Id., (quoting Speiser v. Randall, 357 U.S. 513, 526 (1958)).

The Supreme Court has made it clear that when a court reviews constitutional sufficiency of evidence, it is required to determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Nevils, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see also McDaniel v. Brown, 130 S. Ct. 665, 673, 175 L. Ed. 2d 582 (2010) (reaffirming the Jackson standard).

It is very clear that the jury **MUST** be presented with evidence to prove each and every element of a crime beyond a reasonable doubt, and if an element is not proved beyond a reasonable doubt, then the conviction cannot stand. The Ninth Circuit has held that the verdict must be reversed "if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish **every element** of the crime beyond a reasonable doubt." Nevils, 598 F.3d at 1165 (citing Jackson, 443 U.S. at 319.

### B. FAILURE TO PROVE "DESIGNED AS A WEAPON"

The statutes of Petitioner's conviction, 26 U.S.C. §§ 5801 et seq., charge violations of receipt, transfer, or possession of firearms.

For purposes of 26 U.S.C. §§ 5801 et seq., firearms are defined under 26 U.S.C. § 5845. Included in the definition of

firearm is "destructive device," which would include explosive devices. See 26 U.S.C. § 5845(a)(8), (f). Subsection (f) of § 5845 states that, "[t]he term 'destructive device' shall not include any device which is neither designed nor redesigned as a weapon." See 26 U.S.C. § 5845(f).

The legislative history of the National Firearms Act, 26 U.S.C §§ 5801 et seq., specifically states that the exception of "designed or redesigned as a weapon" is an affirmative defense. See Senate Judiciary Committee Report, S.Rep.No. 1501, 90th Cong., 2d Sess. 47 (1968).

The Ninth Circuit has already addressed this very situation in Medley v. Runnels, 506 F.3d 857 (9th Cir. 2007) (en banc). The jury was improperly instructed that a flare gun discharged by the inmate was a firearm without any finding that the flare gun was designed to be used as a weapon. The jury instruction that the flare gun was a firearm, based on a finding that the flare gun operated as a firearm in expelling a projectile through a barrel by the force of an explosion, erroneously failed to allow a jury finding concerning whether the flare gun was designed to be used as a weapon as also required by the definition.

Petitioner's case was precisely analogous to Medley. Much testimony was presented by Government witnesses that the NFDDs are explosives, and, in fact, the Government's entire trial presentation was centered on convincing the jury that NFDDs are explosives. Moreover, a jury instruction was given that the NFDDs were classified as "destructive devices," but no testimony or

(8)

evidence was ever presented to the jury concerning whether the NFDDs possessed by Petitioner were designed or redesigned to be used as weapons.

In fact, a review of the transcripts of the jury instructions shows that the trial judge specifically stated to the jury that a Government witness testified that NFDDs were defined as destructive devices. See, Exhibit A: trial transcripts of jury instructions at 1146-47 ("During the trial, you heard the testimony of Johnnie Green, who expressed opinions concerning the characterization of items as destructive devices.").

However, a review of the transcripts of Johnnie Green's testimony shows that at no time did he ever testify that a destructive device must be designed or redesigned as a weapon in order for there to be a criminal act. See, Exhibit B: trial transcripts of Johnnie Green's testimony, pages 1-49. Nor did Mr. Green ever provide any evidence that the NFDDs that were specifically possessed by Petitioner had been designed or redesigned as weapons. To the contrary, the Government did provide evidence that all devices were legally manufactured by Precision Ordinance, Inc., including testimony by an employee of Precision Ordinance.

The jury never gained critical information from testimony concerning the element of "designed or redesigned as a weapon," which resulted in an erroneous conviction.

"A court should always set aside a jury verdict of guilt when there is not enough evidence from which a jury could find a

defendant guilty beyond a reasonable doubt." <u>United States v.</u>
<u>Vuitch</u>, 402 U.S. 62, 72 n.7 (1961).

Congressional statute clearly requires that a device which is
not designed or redesigned as a weapon is specifically excluded as
a destructive device, which means it is also excluded as a firearm
and cannot constitute an offense under 26 U.S.C. §§ 5801 et seq.

The same issue has been similarly resolved in several sister
circuits.

In <u>United States v. Hammond</u>, 371 F.3d 776, 780 (11th Cir.
2004), the government's theory was that the device came within the
statute's proscriptions because it was an explosive device. The
government's expert testified to its construction and explosive
capabilities, and offered his opinion that anyone within direct
proximity of such an explosion could sustain serious injury or
death. However, the Eleventh Circuit held that in order for an
explosive device to so qualify, the Government must prove that it
was **designed** for use as a **weapon**. "Thus, a device that explodes is
not covered by the statute merely because it explodes. Statutory
coverage depends upon proof that a device is an explosive **PLUS**
proof that it was designed as a weapon. No explosive can
constitute a destructive device within the meaning of the statute
unless it has this 'plus' factor." <u>Id.</u> (emphasis in original).
<u>Also see</u> <u>United States v. Reindeau</u>, 947 F.2d 32, 36 (2d Cir. 1991)
(excluding from coverage any device that was not designed nor
redesigned as a weapon).

The law is clear that just because a thing explodes, it is

not a "destructive device" or "firearm" unless it is designed or redesigned as a weapon. Other things that explode but are not designed as weapons are: dynamite, fertilizer, gasoline, and fireworks.

It is obvious that dynamite explodes, and it is equally obvious that dynamite can cause massive destruction, but dynamite is not designed as a weapon, and thus, is not a "destructive device." See e.g., United States v. Posnjak, 457 F.2d 1110, 1116-17 (2d Cir. 1972) (Dynamite is not designed as a weapon and is not a destructive device).

It is well-known that fertilizer was a component in the explosive matrix which destroyed the Murrah Federal Building in Oklahoma City, but fertilizer, itself, is not designed as a weapon. Fireworks maim children and destroy property every year, but they are not designed as weapons, and are, in fact, sold to children. Gasoline is used for molotov cocktails, but gasoline, in and of itself, is not designed as a weapon.

The testimony of the Government's ATF expert, Johnnie Green, see Exhibit B, shows that the Government's case centered on the fact that the NFDDs explode. Mr. Green described "high explosives" and flash powder. He referred to the devices by various names, such as "stun grenades," "flash explosive grenades," "rubber impact grenades," "flash bang," "flash stun grenade," "smoke grenade," "illuminator grenade," and even "diversionary devices." But never once did Mr. Green provide any testimony, nor direct evidence, that any device charged within the indictment, presented

into evidence or examined by him, by whatever name, was designed or redesigned as a weapon.

NFDDs are not designed as weapons, even though they explode. "A Flash-bang device" is a light/sound **diversionary device** (not destructive device) designed to emit a brilliant light and loud noise upon detonation. Its purpose is to stun, disorient, and temporarily blind its target, creating a window of time in which police officers can safely enter and secure a potentially dangerous area. Boyd v. Benton County, 374 F.3d 773, 776 (9th Cir. 2004). By its own definition, NFDDs are "Noise Flash **Diversionary Devices**, not Noise Flash Destructive Devices.

The really frightening, and ironic, aspect of Petitioner's case is that he was certified in the use and deployment of NFDDs, and used the devices in **Nationally Accredited** Tactical Operational Medical Support Courses created and taught by Petitioner, which trained tactical medics from various federal, state and local law enforcement agencies, the military, and members of Fire and EMS Services throughout the United States, Canada, and Europe.

Trial testimony from Government witnesses demonstrated that all devices were legally manufactured and were in the original condition in which they were manufactured. The NFDDs had not been tampered with, redesigned or altered in any manner. Moreover, trial testimony also demonstrated that such devices are routinely shipped by regular freight carriers. Furthermore, testimony demonstrated that Petitioner stored the devices, in accordance with federal law, in the same cardboard boxes in which they were

(12)

shipped, as displayed in photographic exhibits by the Government
which showed the cardboard boxes with the police department
address on the mailing labels.

Importantly, the jury was misinformed and misled that the ATF
determined what was legal and what was illegal. See Exhibit B,
page 25, lines 18-19 ("But the ATF is who determines the legality,
correct?" "That's correct."). In fact, the ATF does not determine
what is legal or illegal, Congress does. The courts then interpret
the congressional law. The ATF only enforces what Congress and the
courts have determined as lawful and unlawful. The intent of
Congress was not to punish legitimate commercial use, which is why
dynamite is not considered a "destructive device." However, in
this case, that is precisely what took place. The jury was
misinformed that the ATF determined what was lawful and unlawful,
and that the ATF had determined in this case that NFDDs were
unlawful destructive devices, without taking into account that
Congress expressly excluded devices that were not designed or
redesigned as weapons.

For example, In Posnjak, the Sixth Circuit held that Congress
was concerned with the objectively identifiable weapons of war and
"gangster-type" weapons, and not with the unlawful use of
otherwise legitimate devices. Posnjak, 457 F.2d at 1116.

Another example is that ground burst projectile simulators
designed for use in training troops, not designed or redesigned
for use as weapons, are not "destructive devices," and a
defendant's purpose in using such a simulator was irrelevant to

determine whether the device came within the statutory exclusion in 26 U.S.C. § 5845(f), where a device has a legitimate use. See United States v. Dalpaiz, 527 F.2d 548 (6th Cir. 1975).

The Government failed to prove beyond a reasonable doubt that NFDDs are destructive devices, because the Government completely failed to present **ANY** evidence to the jury that the NFDDs possessed by Petitioner were designed or redesigned as weapons. Moreover, it is clear that NFDDs, by definition, are **NOT** designed or redesigned as weapons.

## V. HABEAS GATEWAYS

The U.S. Supreme Court has made it clear, especially with several new holdings and reaffirmings, that for cases such as Petitioner's, habeas "gateways" exist to provide relief, no matter what procedural roadblocks may otherwise exist.

### A. ACTUAL INNOCENCE AND MISCARRIAGE OF JUSTICE

As a general rule, defaulted claims may support habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error. See House v. Bell, 547 U.S. 518, 165 L. Ed. 2d 1, 20, 126 S. Ct. 2064 (2006); Murray v. Carrier, 477 U.S. 478, 485 (1986); Engle v. Isaac, 456 U.S. 107, 129 (1982).

However, the Supreme Court has recognized a "miscarriage of justice" exception. In certain exceptional cases involving a compelling claim of actual innocence, the procedural default rule is not a bar to a federal habeas corpus petition. See Schlup v.

Delo, 513 U.S. 298, 319-322 (1995). "[I]n appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration." House, supra, at 21; Carrier, supra, at 495; Engle, supra, at 135 (internal quotation marks and citations omitted).

The Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass." McQuiggin v. Perkins, 569 U.S. ____, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019, 1027 (2013). A "petition supported by a convincing Schlup gateway showing 'raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without assurance that that trial was untainted by constitutional error,' hence, 'a review of the merits of the constitutional claims' is justified." House, supra, at 21 (quoting Schlup, supra, at 317).

A petitioner meets the threshold requirement if he shows that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. (quoting Schlup, supra, at 329; House, supra, at 21); see also Lee v. Lambert, 653 F.3d 929, 937 (9th Cir. 2011).

"[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief." Perkins, 133 S. Ct. at 1931, 185 L.Ed. 2d at 1031. "[A]lthough to be credible a gateway claim requires new reliable evidence --

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial, the habeas court's analysis is not limited to such evidence." House, 165 L. Ed. 2d at 21 (internal citations and quotation marks omitted).

In Carrier, the Supreme Court explained that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Id., at 496 (cited in Perkins, 133 S. Ct. at 1931, 185 L.Ed. 2d at 1030-1031). The miscarriage of justice exception "is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Perkins, 133 S. Ct. at 1931, 185 L. Ed. 2d at 1031 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993) (internal quotation marks omitted).

In Petitioner's case, it is clear that, in light of the evidence of "designed or redesigned as a weapon," no reasonable juror would have voted to find him guilty beyond a reasonable doubt, and the constitutional violation has "resulted in the conviction of one who is actually innocent."


## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner discovered the constitutional error of the failure to prove the element of "designed or redesigned as a weapon"

during a review of his case in light of Descamps v. United States,
570 U.S. ____, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). Descamps
focused on the elements of a statute, and it was through a review
of the statutory elements of Petitioner's offenses of conviction
that he discovered the "designed or redesigned as a weapon" error.
Petitioner realized that the Government completely failed to prove
that element to the jury, and that his trial and appellate counsel
completely failed to object to the Government's failure to prove
the element. Counsel were constitutionally ineffective for failing
to raise the issue of the essential element.

"Attorney error that constitutes ineffective assistance of
counsel is cause[.]" Coleman v. Thompson, 501 U.S. 722, 753-754
(1991). "[I]f the procedural default is the result of ineffective
assistance of counsel, the Sixth Amendment itself requires that
responsibility for the default be imputed to the [Government]."
Id. at 754 (quoting Carrier, 477 U.S. at 488). Moreover, prejudice
is demonstrated by the fact that an actually innocent person was
convicted and sentenced to federal prison.

An attorney's errors during an appeal on direct review may
prove cause to excuse a procedural default, for if an attorney
appointed by the Government to pursue the direct appeal is
ineffective, the prisoner has been denied fair process and the
opportunity to comply with the Government's procedures and obtain
an adjudication on the merits of his claim. See Martinez v. Ryan,
566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).

Moreover, a procedural default will not bar a federal court

from hearing a substantial claim of ineffective assistance at trial if, in the initial collateral proceeding, there was no counsel. See Trevino v. Thaler, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013).

Petitioner's trial and appellate counsel were clearly ineffective for failing to raise the issue that the Government did not present the essential element of "designed or redesigned as a weapon" to the jury. The constitutional error was clearly prejudicial because it resulted in a conviction and a prison term of 10 years for an act that the law does not make criminal. The deficient performance of counsel caused an innocent man to be separated from his family and to lose his liberty for 10 years.

## CONCLUSION

"The Supreme Court has made clear that federal courts must be mindful of the 'ends of justice' before dismissing a successive habeas petition." Alaimalo v. United States, 636 F.3d 1092, 1099 (9th Cir. 2010) (quoting Kuhlmann v. Wilson, 477 U.S. 436, 451 (1986)).

"[A prisoner] is entitled to an acquittal of the specific crime charged if upon all the evidence there is reasonable doubt whether he was capable in law of committing crime. ... No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them ... is sufficient to show beyond a reasonable doubt the existence of every fact necessary to

constitute the crime charged." Winship, 397 U.S. at 363 (quoting Davis v. United States, 160 U.S. 469, 484 (1895)).

A court "must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

The Government failed to present any evidence or testimony to the jury as to whether NFDDs are designed as weapons, or that Petitioner had redesigned the NFDDs as weapons. An essential element of Petitioner's offenses of conviction was not presented to the jury and proved beyond a reasonable doubt.

NFDDs are not designed as weapons, nor did Petitioner redesign, alter, or tamper with any NFDD in any manner. Petitioner's convictions and punishment "are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice." Bousley, 523 U.S. at 626 (quoting Davis v. United States, 417 U.S. 333, 346-347 (1974)).

Petitioner is actually innocent of his offenses of conviction. Petitioner's counsel were constitutionally ineffective for failing to raise the claim of the unproved essential element. "[F]ailure to consider the federal claim will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 495 (1986); Engle v. Isaac, 456 U.S. 107, 135 (1982)).

The principles of comity and finality must yield to the imperative of correcting a fundamentally unjust incarceration. In light of the evidence, no reasonable juror would vote to find Petitioner guilty beyond a reasonable doubt.

Constitutional violations have resulted in the conviction of one who is actually innocent, and this Court has the jurisdiction and the authority to grant this habeas petition in order to correct a fundamental miscarriage of justice.

### RELIEF

Petitioner respectfully petitions this Honorable Court to **GRANT** a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and issue a judgment of acquittal based upon Petitioner's actual innocence and to correct a fundamental miscarriage of justice.

Respectfully submitted,

_____
Eugene H. Williams, Jr., pro se

## CERTIFICATE OF SERVICE

I, Eugene H. Williams, Jr., Petitioner in pro se, certify that on _____, 2014, a true and correct copy of the foregoing, PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241, was served on the following:

United States District Court
For the District of Arizona
Tucson Division
Office of the Clerk
405 W. Congress St., Suite 1500
Tucson, Arizona 85701

by being personally handed to an agent of the Clerk's Office by my representative.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this ___8 TH___ day of August, 2014.

Eugene H. Williams, Jr., pro se
Reg. No. 66170-179
FCI Safford
P.O. Box 9000
Safford, Arizona 85548